**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

SMEC AMERICA CORP,

       *Plaintiff*,

    v.

AGGRESSIVE HYDRAULICS LEASING COMPANY, INC. and HALES MACHINE TOOL, INC.,

       *Defendants*.

Civil Action No. 21-cv-19465

**OPINION & ORDER**

---

**John Michael Vazquez, U.S.D.J.**

In this matter, Plaintiff largely asserts breach of contract and negligence-based claims, but the overarching dispute is whether a machine manufactured by Plaintiff was free of defects and conformed to the manufacturing specifications. Presently before the Court are motions to dismiss filed by Defendants Hales Machine Tool, Inc. ("Hales"), D.E. 8, and Aggressive Hydraulics Leasing Company, Inc. ("AHL"), D.E. 10. AHL also seeks, in the alternative, to transfer the matter to the District of Minnesota. D.E. 8. Plaintiff SMEC America Corp. ("SMEC") filed briefs in opposition, D.E. 12, 13, to which Defendants replied, D.E. 18, 19.[1] The Court reviewed the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil

---

[1] In this Opinion, the Court refers to Hales' brief in support of its motion to dismiss (D.E. 8-1) as "Hales Br."; AHL's brief in support of its motion to dismiss (D.E. 10-3) as "AHL Br."; SMEC's brief in opposition to Hales' motion (D.E. 12) as "Hales Opp."; SMEC's brief in opposition to AHL's motion (D.E. 13) as "AHL Opp."; Hales' reply (D.E. 19) as "Hales Reply"; and AHL's reply (D.E. 18) as "AHL Reply".

Procedure 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, the motions are **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND AND PROCEDURAL HISTORY

As the parties are familiar with this matter, the Court does not provide a detailed factual recitation.  Instead, the Court reviews relevant facts here and discusses certain additional facts in the analysis section below.[2]

Hales, a machine tool distributor, is located in Minnesota.  Certification of Shawn M. Jones ("Jones Cert.") ¶¶ 2-3, D.E. 8-3.  During the events at issue, Hales distributed SMEC machines. *Id.* ¶ 4.  In 2020, AHL, another Minnesota-based company, contacted Hales about purchasing a specific type of machine.  Hales suggested an SMEC machine.  After negotiations between Hales and AHL, AHL agreed to purchase a floor model from Chicago.  *Id.* ¶¶ 14-17; Declaration of Paul Johnson ("Johnson Decl.") ¶¶ 6-7.  Hales sent a purchase order for the machine to SMEC, a New Jersey-based company, and provided payment to SMEC in New Jersey.  Compl. ¶¶ 6-7.  SMEC shipped the floor model from Chicago to AHL in Minnesota.  Johnson Decl. ¶ 11.

Shortly after the purchase, the SMEC machine allegedly became unusable.  Compl. ¶ 13. AHL and Hales informed Plaintiff of the problem, and Hales sent technicians to try and repair the machine.  Compl. ¶ 14; Jones Cert. ¶¶ 18-19; Johnson Decl. ¶ 14.  Defendants (it is unclear which one) submitted a warranty claim to SMEC, Jones Decl. ¶ 20, and SMEC agreed to replace the

---

[2] The factual background is taken from Plaintiff's Complaint and the parties' declarations and certifications submitted in connection with the motions to dismiss.  When deciding a motion to dismiss for improper venue, a court accepts all well-pleaded allegations regarding venue as true, "draws all reasonable inferences from those allegations in the plaintiffs' favor, and resolves any factual conflicts in the plaintiffs' favor."  *Shah v. Centurum, Inc.*, No. 10-2015, 2011 WL 1527334, at *2 (D.N.J. Apr. 20, 2011) (internal punctuation omitted).  A court, however, "may examine facts outside the complaint to determine whether venue is proper" and need not accept plaintiffs' allegations if "they are contradicted by the defendant's affidavits."  *Id.* (internal quotations omitted).

machine, Compl. ¶ 16.  Plaintiff paid to ship and install the replacement machine to AHL's facility in Minnesota.  *Id.* ¶ 17; Jones Decl. ¶ 20.  Hales then retrieved the second machine in California and brought it to Minnesota.  Declaration of Peter Jung ("Jung Decl.") ¶ 6, D.E. 12-1.

The second SMEC machine also failed.  Compl. ¶ 18.  "All or most of SMEC's subsequent phone, email, and fax communications with Hales . . . occurred from its New Jersey office."  Jung Decl. ¶ 7.  Once again, Hales sent a member of its service team to inspect the machine, Jones Cert. ¶ 21, and two SMEC employees also tried to fix the machine.  Jung Decl. ¶ 10.  One of the SMEC employees traveled from New Jersey to Minnesota.  *Id.*  After SMEC was  unable to fix the machine, AHL rescinded its acceptance of the machine and demanded a refund.  Compl. ¶¶ 19-21.

AHL represents that it attempted to resolve the dispute with SMEC without litigation. After SMEC refused AHL's attempts, however, AHL mailed SMEC a copy of a complaint that it intended to file in Minnesota regarding the defective machines.  Declaration of Matthew Robinson ("Robinson Decl.") ¶¶ 2-4, D.E. 10-1.  Approximately ten days later, Plaintiff filed the instant action.  *Id.* ¶ 4.  Plaintiff seeks a declaratory judgment stating that it fully performed under the sales agreement (Count One) and Hales breached the contract (Count Two).  Plaintiff also asserts disparagement (Count Two) and negligence (Count Four) claims against Hales based on Hales' alleged representations to AHL about the machine's design flaws and manufacturing defects.  D.E. 1.  Defendants subsequently filed the instant motions to dismiss.  Hales seeks to dismiss the Complaint for improper venue, lack of personal jurisdiction, and failure to state a claim.  D.E. 8. AHL contends that the Complaint should be dismissed for improper venue, or in the alternative, transferred to the District of Minnesota.  D.E. 10.

## II. ANALYSIS

### A. Dismissal for Improper Venue

Defendants maintain that this matter must be dismissed because Plaintiff brought suit in an improper venue. *See, e.g.*, AHL Br. at 7-11. Federal Civil Rule of Procedure 12(b)(3) permits a court to dismiss a matter that is filed in an improper venue. Fed. R. Civ. P. 12(b)(3). A district court has broad discretion in determining whether to dismiss or transfer a case due to improper venue. *See Konica Minolta, Inc. v. ICR Co.*, No. 15-1446, 2015 WL 9308252, at *5 (D.N.J. Dec. 22, 2015). But "dismissal is considered to be a harsh remedy and transfer of venue to another district court in which the action could originally have been brought[ ] is . . . preferred." *Id.* (quoting *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 319 (D.N.J. 1998)). The "defendant[s]…bear the burden of showing improper venue." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1982).

Venue is governed exclusively by the relevant federal laws. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). 28 U.S.C. § 1391(b) provides that a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3). If a case falls into at least one of the Section 1391(b) categories, venue is proper. *Atl. Marine Constr. Co., Inc.*, 571 U.S. at 55.

4

The parties focus solely on Section 1391(b)(2), which, as noted, provides that a case may be brought in a district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).  To make this determination, courts look at the nature of the dispute and "the location of those events or omissions giving rise to the claim." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 161 (3d Cir. 2012) (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)).  "Events or omissions that might only have some tangential connection with the dispute in litigation are not enough." *Cottman Transmission Sys., Inc.*, 36 F.3d at 294.  The statute, however, "does not require a majority of events to take place" in a chosen venue. *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 376 (D.N.J. 2000).  Consequently, multiple fora may be appropriate venues.  "[T]here can be more than one place in which a 'substantial part' of the acts or omissions occurred" and a court is not required to determine "the 'best' forum" *See Ferratex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp 432, 438–39 (D.N.J. 2015).[3]

Defendants argue that New Jersey is an improper venue because the relevant events and conduct occurred in Minnesota, not New Jersey.  *See* AHL Br. at 7-11; Hales Br. at 12-13. Defendants point to the fact that they are both Minnesota corporations and both machines were shipped to, and used in, Minnesota.  Compl. ¶¶ 7, 14, 17-19.  Defendants continue that AHL negotiated and ultimately purchased the first machine from Hales.  Defendants contend that their

---

[3] In arguing that venue is improper, AHL relies in part on *Tifa Limited v. Republic of Ghana*, 692 F. Supp. 393, 405 (D.N.J. 1988).  In *Tifa*, the court addressed venue for actions brought under the Foreign Services Immunities Act ("FSIA"), which is a different standard than determining venue for civil cases under Section 1391(b).  *See Tifa*, 692 F. Supp. at 405 (explaining that "courts have required extensive events or omissions giving rise to a claim to occur in the forum in order for venue to be appropriate under the FSIA venue provision").

negotiations occurred exclusively in Minnesota.  Johnson Decl. ¶ 6.  Finally, Defendants note that the attempts to fix both machines occurred in Minnesota.  *Id.* at ¶¶ 15, 22-23.

While much of the relevant conduct clearly took place in Minnesota, critical decisions and events also occurred in New Jersey.  Specifically, Hales was a distributor for SMEC and contacted SMEC in its New Jersey office about the two machines at issue.  Jones Cert. ¶ 4; Jung Decl. ¶ 7.  Hales contacted SMEC in New Jersey to order the first machine, Jung Decl. ¶ 6, and sent payment to New Jersey, *id.* ¶ 9.  Moreover, SMEC sent the sales agreement and related documents, including manuals, from its New Jersey office.  *Id.* ¶ 8; Compl. ¶ 9.  After the first machine failed, Defendants notified Plaintiff and one of the Defendants submitted a warranty claim to SMEC.  Jones Cert. ¶ 20; Johnson Decl. ¶ 14.  While not explicitly stated, the Court infers that these conversations occurred with SMEC's employees in New Jersey.  In addition, SMEC agreed to replace the first machine, making arrangements to do so from New Jersey.  Johnson Decl. ¶ 16; Jung Decl. ¶ 6.

The New Jersey conduct relates to Plaintiff's claims.  First, two of Plaintiff's claims pertain to the sales agreement, Compl. ¶¶ 24, 29-30.  Although AHL maintains that the negotiations for purchase occurred solely between AHL and Hales in Minnesota, Johnson Decl. ¶ 7, Hales notified Plaintiff about the purchase in New Jersey and SMEC sent Hales the contract from New Jersey, Jung Decl. ¶ 8. Thus, it appears that the contract originated from New Jersey.  Plaintiff's remaining claims involve Hales' allegedly false communications to AHL.  Compl. ¶¶ 26, 33.  In essence, Plaintiff alleges that it provided Hales with information and manuals regarding safe and proper use of the machines but Hales did not convey this information to AHL.  *Id.* ¶ 9.  As discussed, Hales communicated with SMEC's employees in New Jersey, Jung Decl. ¶ 7, and the manuals and information were purportedly created and sent from New Jersey.  Compl. ¶ 9; Jung Decl. ¶ 8.

The Court cannot conclude that conduct in New Jersey is tangential to Plaintiff's claims. Hales contacted Plaintiff in New Jersey to purchase the first machine, Plaintiff sent the contract from New Jersey, decisions regarding the replacement machine occurred within the state, both Defendants communicated with Plaintiff in New Jersey about the machine's defects, and Hales communicated with Plaintiff in New Jersey about the machines use and capabilities. Accordingly, a substantial part of the events occurred in this state, such that venue is appropriate under 28 U.S.C. § 1391. Defendants' motions are denied on these grounds.

**B.      Transfer pursuant to 28 U.S.C. § 1404(a)**

AHL also argues that this case should be transferred to the District of Minnesota under 28 U.S.C. § 1404(a). AHL Br. at 11-19. Because New Jersey is a proper venue, the Court turns to AHL's alternative argument to transfer under Section 1404(a).[4] *See Ferratex, Inc.*, 121 F. Supp. 3d at 437 (explaining that "if Defendants cannot sustain their burden of showing that venue is improper under § 1391(b)(2), then the Court will apply § 1404(a)").

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Accordingly, "Section 1404(a) provides for the transfer of a case where both the original and requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). "The moving party bears the burden of establishing that the transfer is appropriate and must establish that the alternate forum is more convenient than the present forum." *Ferratex, Inc.*,

---

[4] Hales maintains that the Complaint should be dismissed as to it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Hales Br. at 8-11. A transferor court does not need personal jurisdiction over every defendant to transfer pursuant to Section 1404(a). *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 507 (D.N.J. 1998). Consequently, the Court does not reach Hales' personal jurisdiction argument.

121 F. Supp. 3d at 440.  Ultimately, the Section 1404 analysis "is flexible and must be made on the unique facts of each case."  *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 479 (D.N.J. 1993).

In conducting a § 1404(a) analysis, a court must first determine whether a plaintiff could have brought suit in the proposed forum.  *Santi v. Nat'l Bus. Recs. Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010).  Plaintiff does not argue that the District of Minnesota is an improper forum.  As discussed, AHL and Hales' negotiations regarding the initial purchase occurred in Minnesota, both machines were used and failed in Minnesota, and the attempts to repair also occurred in the state.  Consequently, venue is also proper in the District of Minnesota pursuant to 28 U.S.C. § 1391(b)(2).

The Court, therefore, turns to the second prong of its Section 1404(a) analysis, whether transfer would be in the interest of justice and for the convenience of the parties and witnesses.  28 U.S.C. § 1404(a).  "[C]ourts decide whether to grant a § 1404(a) transfer by evaluating various private and public interests."  *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 401 (3d Cir. 2017). The private interest factors include the following:

> [T]he plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses, and the location of books and records.

*Id.* at 402 (quoting *Jumara*, 55 F.3d at 879).  The public interest factors include:

> The enforceability of the judgment, the relative administrative difficulty in the fora resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judgment with the applicable state law in diversity cases.

*Id.*

As to the private interest factors, AHL contends that Plaintiff's choice of forum should be given little deference because the substantive events did not occur in New Jersey and neither Defendant is in the state. AHL Br. at 13-14. SMEC counters that its choice of forum should be given greater weight because its principal place of business is in New Jersey. AHL Opp. at 9-10. Although a plaintiff's choice of forum is of "paramount concern," it is "neither dispositive of the transfer analysis nor is it the only factor to be considered." *Ricoh Co., Ltd.*, 817 F. Supp. at 480. As discussed, much of the relevant conduct occurred in Minnesota. But certain events did occur in New Jersey--Plaintiff's choice of forum and its principal place of business. As a result, this factor weighs against transfer.

Next, AHL argues that the evidence in this matter, in the form of witness testimony and physical evidence, is predominantly located in Minnesota. AHL Br. at 14-15. Relatedly, AHL maintains that transferring this matter to Minnesota would be more convenient for the parties and witnesses. *Id.* at 15-16. SMEC counters that the convenience for AHL's witnesses is immaterial, and the location of physical evidence does not support a transfer. AHL Opp. at 11-15. Plaintiff continues that all evidence can be transferred to New Jersey and witnesses can also travel to this district for trial, if necessary. *Id.* Although Plaintiff is correct that witnesses and evidence can be produced within this state, asking Defendants' witnesses to travel to a different state and transferring evidence, including heavy machinery, from Minnesota to New Jersey will likely cause needless expenses. While the Court is aware that certain evidence and witnesses are in New Jersey, it seems that asking SMEC's witnesses to travel and moving any paper evidence from New Jersey to Minnesota is less cumbersome. Finally, while this Court determined that a substantial part of the events took place in New Jersey, most of the relevant conduct took place in Minnesota. As a result, the remaining private interest factors weigh towards transfer. In sum, even giving deference

to Plaintiff's choice of forum, the private interest factors weigh towards transferring this matter to Minnesota.

As for the public interest factors, AHL maintains that practical considerations of trial weigh towards transfer because most of the witnesses are in Minnesota. As a result, logistical arrangements were this case to proceed to trial would be easier because witnesses would not need to travel. AHL Br. at 17. Plaintiff argues this case should be transferred because there is nothing in the record demonstrating that witnesses could not travel to New Jersey. AHL Opp. at 12. Although the Court is aware that Plaintiff is in New Jersey, both Defendants are based in Minnesota. In addition, while not raised by either party, the Court notes that any non-party witness who lives in Minnesota would likely be outside of this Court's subpoena power. *See* Fed. R. Civ. P. 45(c)(1). As a result, because two out of the three parties (and their witnesses) are in Minnesota, litigating this case will likely be more efficient in Minnesota.

AHL also argues that the public interest factors weigh towards transfer because the District of Minnesota's docket is not as congested as the District of New Jersey. *Id.* at 18. SMEC maintains that this factor alone cannot serve as the basis for transfer. AHL Opp. at 15. In June of 2022, the weighted filings per judge in New Jersey were 659 while the weighted filings per judge in Minnesota were 391. In addition, there were 14,268 filings in New Jersey compared to 8,943 filings in Minnesota. *See* U.S. Courts, Statistics & Reports, https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/06/30-3. While Plaintiff is correct that this factor is not dispositive, it does weigh slightly towards transfer.

The remaining public interest factors are neutral. AHL concedes that a judgment could be enforced in either state. AHL Br. at 17. And, as discussed, while much of the conduct occurred in Minnesota, certain events did occur in New Jersey and Plaintiff is in New Jersey. Accordingly,

this case implicates local interests and certain public policies in both states. Finally, AHL states that Minnesota law would likely apply in this matter. AHL Br. at 19. Without delving into a choice of law analysis, the Court is more than able to apply Minnesota law and a judge in the District of Minnesota is equally able to apply New Jersey law, if necessary.

Viewed together, the public interest factors also weigh in favor of transfer. Because the private and public interest factors weigh towards transfer, the Court will transfer this matter under 28 U.S.C. § 1404(a). AHL's motion is granted on these grounds.[5]

### III. CONCLUSION

For the foregoing reasons, and for good cause shown,

IT IS on this 4th day of October, 2022,

**ORDERED** that Hales Machine Tool, Inc's motion to dismiss (D.E. 8) is **DENIED** with respect to its arguments for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(3). Because the Court did not reach its arguments for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), the motion is **DENIED without prejudice** on these grounds. If it chooses to do so, Hales may reassert these arguments in the District of Minnesota; and it is further

**ORDERED** that Defendant Aggressive Hydraulics Leasing Company's motion (D.E. 10) is **DENIED** as to its arguments for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(3); and it is further

---

[5] Because the Court is transferring this matter, it will not address Hales' Rule 12(b)(6) arguments for dismissal.

**ORDERED** that Defendant Aggressive Hydraulics Leasing Company's motion (D.E. 10) is **GRANTED** as to its argument to transfer the matter pursuant to 28 U.S.C. § 1404(a); and it is further

**ORDERED** that the Clerk's Office shall transfer this matter to the District of Minnesota.

John Michael Vazquez, U.S.D.J.